UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| BELLSOUTH TELECOMMUNICATIONS, INC., d/b/a AT&T Kentucky, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3: 09-14-DCR |
| V. | ) ) | |
| KENTUCKY PUBLIC SERVICE COMMISSION, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff BellSouth Telecommunications, Inc., d/b/a AT&T Kentucky ("AT&T Kentucky"), seeks declaratory and injunctive relief from orders of the Kentucky Public Service Commission ("PSC") concerning an interconnection agreement between AT&T Kentucky and SouthEast Telephone, Inc. ("SouthEast").[1] The issues have been fully briefed, and oral argument was held on October 26, 2010. For the reasons discussed below, the Court will grant the relief sought by AT&T Kentucky and remand the matter to the PSC for further proceedings.

**I.**

In June 2006, SouthEast sought arbitration of a new interconnection agreement with AT&T Kentucky. [*See* Tr., p. 1-19] SouthEast proposed that the agreement contain a provision

---

1   SouthEast was also named as a defendant; however, it has ceased active participation in the case because it is involved in bankruptcy proceedings and was scheduled to be liquidated in early October. [*See* Record No. 45-1 (letter from SouthEast's counsel dated Sept. 29, 2010)]

allowing it the option of an interconnection arrangement "at a meet point outside, but adjacent to, a BellSouth [AT&T Kentucky] central office or remote node" for purposes of accessing unbundled network elements ("UNEs"). [Tr., p. 11-12] In subsequent testimony and filings, SouthEast referred to the proposed arrangement as "adjacent off-site collocation" or "off-premises collocation." [*See, e.g.*, Tr., p. 1268-71; Record No. 11, p. 7 ¶ 22] AT&T Kentucky objected to such an arrangement, arguing that there was no legal basis for requiring collocation anywhere other than on an incumbent local exchange carrier's ("ILEC") premises. [Tr., p. 1222-26] Nevertheless, in its March 28, 2007 Order, the PSC determined that the provision should be implemented, finding the proposed arrangement to be a permissible "[m]eet point interconnection arrangement[]." [Record No. 26-2, p. 10; *see id.*, p. 8-11] The PSC denied AT&T Kentucky's request for rehearing on the issue by order dated May 10, 2007. [Record No. 26-3, p. 4-5] On March 6, 2009, the PSC approved the finalized interconnection agreement. [Record No. 26-4, p. 2-3] Attachment 4 to the agreement, entitled "Physical Collocation," contained the following provision:

> **3. Collocation Options**
>
> . . . .
>
> 3.5 <u>Adjacent Off-Site Collocation</u>
>
> 3.5.1 <u>Adjacent Off-Site Collocation Arrangement</u> – When requested by SouthEast through the Physical Collocation application process, AT&T shall permit an Adjacent Off-Site Collocation arrangement regardless of whether on-site space is exhausted to the extent the requested collocation is technically feasible. Such arrangement shall be used for interconnection or access to unbundled network elements. When SouthEast elects to utilize an Adjacent Off-Site Collocation Arrangement, SouthEast shall provide both the AC and DC power required to operate such facility.

> SouthEast may provide its own facilities to AT&T's premises or to a mutually agreeable meet point from its Adjacent Off-site location for interconnection purposes. SouthEast may subscribe to facilities available in the UNE rate schedule of this interconnection agreement or any applicable tariff or other agreement between the parties that provides for access to network elements.

[Tr., p. 1872-73]

AT&T Kentucky filed a complaint in this Court asserting two claims for relief. First, it alleged that by approving an off-site collocation arrangement, the PSC acted arbitrarily, capriciously, in violation of federal law, and contrary to the record evidence, and that the PSC failed to engage in reasoned decision making. [Record No. 1, p. 8-9] AT&T Kentucky made a similar claim with respect to language in the orders concerning commingling of certain facilities. [*Id.*, p. 9] However, according to AT&T Kentucky's reply brief, the parties have "agree[d] that the Court's resolution of the commingling issue in [FCV 08-07] should govern this case as well." [Record No. 29, p. 6 n.3] The Court resolved that issue in a Memorandum Opinion and Order entered February 22, 2010. [*BellSouth Telecommunications, Inc. v. Kentucky Public Service Commission, et al.*, U.S. Dist. Ct., E.D. Ky., Central Div. at Frankfort, Civil Action No. 3: 08-07, Record No. 66, p. 33] Therefore, the only issue remaining is the validity of the off-site collocation provision.

## II.

The Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56 (1996) (codified as amended in scattered sections of 47 U.S.C.), was designed to create competition in local telephone service, eliminating the monopoly that had to that point controlled. *Mich. Bell Tel. Co. v. Covad Commc'ns Co.*, 597 F.3d 370, 372 (6th Cir. 2010). To this end, the Act requires

ILECs, such as AT&T Kentucky, to facilitate the entry of competitive local exchange carriers ("CLECs"), such as SouthEast, into the market. *See id.* Thus, an ILEC must allow CLECs to "connect[] their equipment to the ILEC's existing network or . . . purchas[e] or leas[e] existing network elements and services." *Id.*

Section 251 of the Act imposes various specific duties on ILECs. *See* 47 U.S.C. § 251(c). Of significance for present purposes is § 251(c)(6), which states that an ILEC must "provide . . . for physical collocation of equipment necessary for interconnection or access to unbundled network elements at the premises of the [ILEC]." The regulations define physical collocation as "an offering by an incumbent LEC that enables a requesting telecommunications carrier to: (1) place its own equipment to be used for interconnection or access to unbundled network elements within or upon an incumbent LEC's premises." 47 C.F.R. § 51.5. Meanwhile, "premises" is defined as

> an incumbent LEC's central offices and serving wire centers; all buildings or similar structures owned, leased, or otherwise controlled by an incumbent LEC that house its network facilities; all structures that house incumbent LEC facilities on public rights-of-way, including but not limited to vaults containing loop concentrators or similar structures; and all land owned, leased or otherwise controlled by an incumbent LEC that is adjacent to these central offices, wire centers, buildings, and structures.

*Id.* According to AT&T Kentucky, these definitions preclude an off-site (*i.e.*, off-premises) collocation arrangement.

AT&T Kentucky argues that § 251(c)(6) "specifically requires collocation to be 'at the premises of the [ILEC].'" [Record No. 26, p. 14 (quoting § 251(c)(6) (alteration by AT&T Kentucky))] It contends that off-site collocation simply does not exist under the statute or

regulations.[2] [*Id.*] In other words, AT&T Kentucky maintains that it cannot be required to provide off-site collocation because there is no such thing. The Court agrees.

As stated above, the regulations define physical collocation as an arrangement whereby a CLEC is permitted to place its equipment "within or upon an incumbent LEC's premises" for purposes of interconnection or access to unbundled network elements. 47 C.F.R. § 51.5. Likewise, the Act requires that ILECs provide physical collocation "at the premises of the [ILEC]."[3] 47 U.S.C. § 251(c)(6). The language of the statute and regulations thus does not contemplate off-site, or off-premises, collocation.

The PSC contends that the lack of express authority for such an arrangement is insignificant because "[t]he FCC has stated that its collocation requirements are 'minimum standards' that 'permit any state to adopt additional requirements.'" [Record No. 28, p. 16 (quoting Order on Reconsideration, *Deployment of Wireline Services Offering Advanced Telecommunications Capability* (hereinafter *Advanced Services Order*), 14 FCC Rcd. 4761, 4766 ¶ 8 (Mar. 31, 1999))] The FCC has indeed acknowledged that its rules establish only minimum standards for collocation and that states are free to impose additional requirements. *See Advanced Services Order*, 14 FCC Rcd. at 4766 ¶ 8, 4773 ¶ 23; First Report and Order,

---

2   In the alternative, AT&T Kentucky asserts that the PSC's ruling amounts to a requirement that it provide unbundled access to entrance facilities, a requirement deemed impermissible by the FCC. [Record No. 26, p. 17-22] However, because the Court finds in favor of AT&T Kentucky with respect to collocation, there is no need to address this alternative argument.

3   As a matter of statutory construction, the language of § 251(c)(6) suggests that collocation could also occur off-premises, since otherwise it would be unnecessary to specify that physical collocation is required "at the premises" of the ILEC. However, since physical collocation is defined as taking place "within or upon an incumbent LEC's premises," 47 C.F.R. § 51.5, the phrase "at the premises of the local exchange carrier" in § 251(c)(6) is apparently surplusage.

*Implementation of the Local Competition Provisions in the Telecommunications Act of 1996* (hereinafter *Local Competition Order*), 11 FCC Rcd. 15499, 15786 ¶ 558. That freedom is not unlimited, however. Rather, states are allowed "flexibility to apply additional collocation requirements *that are otherwise consistent with the 1996 Act and [the FCC's] implementing regulations*." *Local Competition Order*, 11 FCC Rcd. at 15784 ¶ 558 (emphasis added).

The PSC reasons that an off-premises collocation arrangement is consistent with the Act and FCC regulations because: (a) nowhere in the law is such an arrangement expressly forbidden, and (b) the arrangement would further the overall purposes of the Act by promoting competition. According to the PSC, because ILECs are required to provide interconnection or UNE access by any technically feasible method, *see* 47 C.F.R. § 51.321(a), and AT&T Kentucky has not shown that off-site collocation is technically infeasible, AT&T Kentucky is required to provide off-site collocation. [Record No. 28, p. 14-15] However, this argument assumes too much.

It is true that an ILEC bears the burden of establishing technical infeasibility. *Local Competition Order*, 11 FCC Rcd. at 15782 ¶ 554; *see* 47 C.F.R. § 51.321(d) ("An incumbent LEC that denies a request for a particular method of obtaining interconnection or access to unbundled network elements on the incumbent LEC's network must prove to the state commission that the requested method . . . is not technically feasible."). Furthermore, there is a rebuttable presumption that a method of interconnection or UNE access already in use (by *any* two networks) is technically feasible. *Local Competition Order*, 11 FCC Rcd. at 15782 ¶ 554. More specific to this case, "the deployment by any incumbent LEC of a collocation arrangement

gives rise to a rebuttable presumption in favor of a competitive LEC seeking collocation in any incumbent LEC premises that such an arrangement is technically feasible." *Advanced Services Order*, 14 FCC Rcd. at 4786-87 ¶ 45; *see also* 47 C.F.R. § 51.321(c) ("A requesting telecommunications carrier seeking a particular collocation arrangement . . . is entitled to a presumption that such arrangement is technically feasible if any LEC has deployed such collocation arrangement in any incumbent premises.").

AT&T does not and cannot argue that off-site collocation is technically infeasible, the PSC asserts, because it already has an off-site collocation arrangement with SouthEast. [Record No. 28, p. 13, 15] In support of this assertion, the PSC cites the testimony of Steven E. Turner, who stated that AT&T Kentucky "has actually implemented collocation arrangements at remote terminals with SouthEast that are very similar to Adjacent Off-Site Collocation Arrangements." [Tr., p. 719; *see* Record No. 28, p. 13 n.11] However, a remote terminal is not "off-site." *See Advanced Services Reconsideration Order*, 15 FCC Rcd. at 17830 ¶ 47 ("Where technically feasible, an incumbent LEC must make physical collocation available in any incumbent LEC structure that houses network facilities and has space available for collocation. Such structures include, to the extent technically feasible, central offices, controlled environmental vaults, controlled environmental huts, cabinets, pedestals, *and other remote terminals*." (emphasis added)). Furthermore, the rebuttable presumption benefits a CLEC "seeking collocation *in any incumbent LEC premises*." *Advanced Services Order*, 14 FCC Rcd. at 4786-87 ¶ 45 (emphasis added); *see also* 47 C.F.R. § 51.321(c) (CLEC "is entitled to a presumption that [a particular collocation] arrangement is technically feasible if any LEC has deployed such collocation

arrangement *in any incumbent LEC premises*"). Here, the crux of the dispute is that the agreement authorizes collocation someplace other than AT&T Kentucky's premises. Thus, SouthEast is not entitled to a presumption of technical feasibility.

The PSC's current argument differs from its reasoning in the March 2007 Order, which justified the disputed provision as contemplating a permissible meet point interconnection arrangement. [*See* Record No. 26-2, p. 10] The regulations define a meet point interconnection arrangement as one in which "each telecommunications carrier builds and maintains its network to a meet point." 47 C.F.R. § 51.5. The language of the PSC's Order reflects this definition: "SouthEast will build and maintain its network to a meet point and requests AT&T Kentucky to do the same." [Record No. 26-2, p. 10] A meet point arrangement is a technically feasible method of interconnection. 47 C.F.R. § 51.321(b). However, it is clearly something different than collocation, as evidenced by the language of § 51.321(b), which provides that "[t]echnically feasible methods of obtaining interconnection or access to unbundled network elements include, but are not limited to: (1) Physical collocation and virtual collocation at the premises of an incumbent LEC; and (2) Meet point interconnection arrangements." *Id.* The PSC does not explain why a provision in the "Physical Collocation" attachment to the interconnection agreement, under the heading "Collocation Options" and the subheading "Adjacent Off-Site Collocation" [*see* Record No. 26-7], should be interpreted as describing a meet point arrangement. At least one other court has found that such labels matter. *See Ind. Bell Tel. Co. v. McCarty*, No. IP-01-1690, 2002 U.S. Dist. LEXIS 24071 (S.D. Ind. Dec. 13, 2002) (citing 47 C.F.R. § 51.5), *rev'd in part on other grounds*, 362 F.3d 378 (7th Cir. 2004).

The interconnection agreement in *Indiana Bell*, like the agreement at issue in the present case, provided the CLEC with the option of an off-site collocation arrangement. *Id.* at *21. The court noted that "[n]othing in the Act or the FCC rules contemplates that collocation may occur away from the ILEC's premises. In fact, by definition, collocation occurs *within or upon* an ILEC's premises." *Id.* at *20. Therefore, the court concluded, "the arrangement in the Agreement for off-site 'collocation' space is not really collocation under Section 251(c)(6) of the Act." *Id.* The court rejected the CLEC's contention – similar to the PSC's argument here – that the off-site arrangement was permissible pursuant to §§ 251(c)(2) and (3), which simply require ILECs to provide interconnection and UNE access. *Id.* at *22. While it acknowledged that the arrangement might pass muster under another section of the Act, the court nonetheless refused to uphold the off-site provisions because they fell under the section of the agreement dealing with collocation, "which impose[d] certain rights and obligations on the parties particular to collocation." *Id.* at *23.

Like the provisions held unenforceable in *Indiana Bell*, the off-site collocation provision at issue in this case, as written, is inconsistent with the Telecommunications Act and FCC regulations. *See id.* The provision clearly falls within the section of the agreement dealing with collocation, yet the arrangement it describes would not really be collocation under the Act. *See id.* at *21. AT&T Kentucky contends that SouthEast labeled the arrangement as collocation to take advantage of TELRIC pricing to which it otherwise would not be entitled. *Cf. id.* at *23. Whatever SouthEast's motivation for proposing it, off-site collocation is clearly beyond – and in fact, is contrary to – the definition of collocation as contemplated by Congress and the FCC.

Moreover, AT&T Kentucky points out, even if the arrangement could properly be described as a meet point arrangement, the FCC has noted that "such an arrangement only makes sense for interconnection pursuant to section 251(c)(2) but not for unbundled access under 251(c)(3)." *Local Competition Order* at 15781 ¶ 553. This is because interconnection benefits both parties, whereas UNE access benefits only the CLEC. *Id.* Consequently, a meet point arrangement in which "each party pays its portion of the costs to build out the facilities to the meet point" is logical in the former scenario but not the latter. *Id.* Here, the PSC's March 2007 Order makes clear that the parties would be expected to bear the costs of building and maintaining the network on their respective sides of the meet point. [Record No. 26-2, p. 10] However, the Order also leaves no question that the off-site arrangement would be for purposes of UNE access. [*Id.* ("SouthEast is proposing to interconnect its facilities with those of AT&T Kentucky *for the purpose of accessing UNEs*." (emphasis added))] Under the FCC's reasoning, then, the disputed provision is not easily defensible as requiring a meet point arrangement.

The PSC's policy argument also fails. A similar argument was unavailing in *US West Communications, Inc. v. American Telephone Technology, Inc.*, No. C00-0586L, 2000 U.S. Dist. LEXIS 19046 (W.D. Wash. Nov. 20, 2000). In that case, the court found a requirement that an ILEC provide for collocation on property it did not own or control to be inconsistent with the Telecommunications Act. *Id.* at \*2-3. Rejecting the state commission's contention – similar to the PSC's argument here – that such a requirement furthered the procompetitive purposes of the Act, the court observed that "[n]either the FCC nor a state commission is authorized to ignore the language of the statute in favor of generalized policy considerations." *Id.* at \*3. The court

quoted the FCC's then-recently revised definition of the term "premises," which "expressly excludes land and structures [the ILEC] does not own or control." *Id.* at *4 (citing 15 FCC Rcd. 17806). Based on that definition, the court concluded, there was "no statutory duty or statutory authorization for requiring plaintiff to provide for collocation on 'nearby' properties." *Id.*

Finally, the PSC points to the *Advanced Services Reconsideration Order*, in which the FCC stated that "the language of section 251(c)(6) does not restrict mandatory physical collocation to places within incumbent LEC structures." Order on Reconsideration, *Deployment of Wireline Services Offering Advanced Telecommunications Capability and Implementation of the Local Competition Provisions of the Telecommunications Act of 1996* (hereinafter *Advanced Services Reconsideration Order*), 15 FCC Rcd. 17806, 17828 ¶ 42 (Aug. 10, 2000). In the next sentence, however, the FCC explained: "Instead, section 251(c)(6) requires physical collocation '*at* the premises of the local exchange carrier.' We find that this term encompasses land owned, leased, or controlled by an incumbent LEC as well as any incumbent LEC network structure on such land." *Id.* (quoting 47 U.S.C. § 251(c)(6) (emphasis added by FCC)). This statement is wholly consistent with AT&T Kentucky's position that it cannot be required to permit collocation on land it does not own or control. Furthermore, two paragraphs later, the FCC clarified that

> "premises" includes all buildings and similar structures owned, leased, or otherwise controlled by the incumbent LEC that house rights-of-way, and all land owned, leased, or otherwise controlled by an incumbent LEC that is adjacent to these structures. *This definition, of course, excludes land and buildings in which the incumbent LEC has no interest*. In that circumstance, the incumbent LEC and its competitors have an equal opportunity to obtain space within which to locate their equipment.

*Id.* ¶ 44 (emphasis added) (footnote omitted). The *Advanced Services Reconsideration Order* thus hurts the PSC's argument more than it helps.

**III.**

The "adjacent off-site collocation arrangement" provision of the interconnection agreement, as written, is inconsistent with the Telecommunications Act and FCC regulations and rulings, which do not contemplate collocation occurring off the premises of the ILEC. The provision, therefore, is unenforceable and the PSC's March 28, 2007, May 10, 2007, and March 6, 2009 Orders are unlawful to the extent they are inconsistent with this Memorandum Opinion and Order. Accordingly, it is hereby

**ORDERED** as follows:

(1) AT&T Kentucky's request for declaratory and injunctive relief is **GRANTED**, in accordance with this Memorandum Opinion and Order.

(2) The Kentucky Public Service Commission's Orders, Case No. 2006-00316, dated March 28, 2007, May 10, 2007, and March 6, 2009, are declared **UNLAWFUL** and **VACATED**, in accordance with this Memorandum Opinion and Order.

(3) All defendants and other parties acting in concert therewith are **ENJOINED** from seeking to enforce the unlawful decisions against AT&T Kentucky.

(4) This case is **REMANDED** to the Kentucky Public Service Commission for further proceedings consistent with this Memorandum Opinion and Order.

(5) This matter is **STRICKEN** from the Court's active docket.

This 27th day of October, 2010.

